**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| E-LINK PLASTIC & METAL INDUSTRIAL CO., LTD., | ) ) ) | |
| Plaintiff, | ) ) ) | No. 24-cv-07494 |
| v. | ) ) | Judge John J. Tharp, Jr. |
| MERICARGO, | ) ) | |
| Defendant. | ) ) | |

**<u>ORDER</u>**

For the reasons set forth in the Statement below, the plaintiff's motion to strike and dismiss [87] is denied as moot. The plaintiff's motion for summary judgment [129] is granted. Final judgment is entered in favor of the plaintiff. Civil case terminated.

**<u>STATEMENT</u>**

### I.   Background

The plaintiff, E-Link Plastic and Metal Industrial Company ("E-Link"), brought suit against a number of individuals and entities who anonymously sell products on online retail websites like Amazon.com. E-Link alleged that these defendants sold products infringing on its pill container patent, and seek both damages and an injunction against future sales. This case started as one of many Schedule A cases so prevalent in this District: an intellectual property claim against numerous foreign sellers using online marketplaces. The only remaining defendant in the case is Mericargo, against whom E-Link seeks summary judgment.

E-Link owns U.S. Patent No. 10,420,703 ("Patent '703"), titled "Pill Container." Pl.'s 56.1 Statement 1 ¶ 1, ECF No. 129-2. E-Link manufactures and sells a product protected by this patent, which is a type of pill container that pops open when the user presses a button at the bottom of the container. *Id.* at 2 ¶ 5; Patent 1, ECF No. 9-4. Patent '703 comprises one independent claim and six dependent claims. The independent claim, Claim 1, includes the following limitations:

A pill container comprising:

a body having

a front wall;
a rear wall opposite the front wall;
multiple compartments formed in the body; and
multiple locking buttons formed on the front wall of the body and aligned
respectively with the compartments;

multiple lids connected pivotally to the rear wall of the body to selectively close the compartments respectively and engaged detachably with the locking buttons respectively, and each lid having an inner surface facing a corresponding one of the compartments of the body; and

multiple resilient pushing bars mounted on the rear wall of the body and respectively abutting against the inner surfaces of the lids, wherein

the body further has multiple insertion sockets formed on the rear wall of the body; and

each resilient pushing bar has a bottom end inserted into a respective one of the insertion sockets in the body.

*Id.* at 10. The Patent '703 drawings show an individual pill compartment with certain claimed components (the locking button, resilient pushing bar, and insertion sockets) either attached to or part of the front or rear walls of the body of pill compartment. The lid, separately, has a locking loop in the front and pivotal holes in the back which mount onto the pivotal axes of the rear wall, attaching the lid to the rear wall of the compartment and allowing it to pivot up and down.



*Id.* at 1. E-Link alleges that Mericargo sells three products that infringe on Patent '703, pictured below:

| Product One[3] | Product Two[4] | Product Three[5] |
|---|---|---|
| | | |

2

Order Vacating Prelim. Inj. 8, ECF No. 108.

E-Link sought and received a preliminary injunction against the sale of infringing products. Prelim. Inj. Order, ECF No. 54. Mericargo subsequently moved to vacate the preliminary injunction, which this Court granted on the ground that E-Link did not sufficiently demonstrate irreparable harm to justify preliminary relief. Order Vacating Prelim. Inj. 10–11.

In its answer to the complaint, Mericargo asserted counterclaims against E-Link: a declaration that E-Link's patent was invalid and unenforceable, a declaration that Mericargo's products did not infringe E-Link's patent, unfair competition, tortious interference with prospective business relationships, and patent misuse. Answer 18–24, ECF No. 63. It also raised various affirmative defenses. *Id.* at 15–16. E-Link moved to strike the affirmative defenses and to dismiss the counterclaims under Federal Rule of Civil Procedure 12(b)(6). Mot. Strike & Dismiss, ECF No. 87. Following the close of discovery, E-Link also moved for summary judgment on its claims and Mericargo's counterclaims. Mot. Summ. J., ECF No. 129. Mericargo did not respond to that motion, meaning it entirely failed to develop the factual bases for its counterclaims and affirmative defenses. As explained below, E-Link is entitled to summary judgment on Mericargo's counterclaims, and the affirmative defenses are waived. The motion to strike and dismiss is therefore denied as moot.

## II.     Motion for Summary Judgment

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, which directs courts to grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When the nonmovant bears the burden of proof at trial, relevant to the defendant's counterclaims here, it must "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). A genuine issue exists when "a reasonable jury could return a verdict for the non-moving party." *Johnson v. Edward Orton, Jr. Ceramic Found.*, 71 F.4th 601, 609 (7th Cir. 2023) (quoting *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022)). Thus, on reviewing a motion for summary judgment, the court views all evidence in the light most favorable to the nonmovant. *Weaver*, 28 F.4th at 820.

The Northern District of Illinois's Local Rules ("LR") require a summary judgment movant to file a statement of material facts, directing the court to the relevant facts found throughout the discovery process. LR 56.1(a)(2). In response, the nonmovant must admit or dispute each of the facts the movant has put forth. LR 56.1(e)(2). If the nonmovant wants to designate facts showing a genuine issue that the movant has not yet designated, he should file a statement of additional material facts. LR 56.1(b)(3). Undisputed facts may be deemed admitted. LR 56.1(e)(3); *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 633 (7th Cir. 2005); *see also FTC v. Bay Area Bus. Council*, 423 F.3d 627, 633 (7th Cir. 2005) ("Because of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts, we have consistently upheld the district court's discretion to require strict compliance with those rules."). These statements of facts help the Court efficiently evaluate the parties' respective arguments, especially given "the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law." *Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011).

3

Because Mericargo filed no response to E-Link's statement of material facts, E-Link's facts are deemed admitted. Nonetheless, E-Link still bears the burden of demonstrating that there is no dispute of material fact and that it is entitled to judgment as a matter of law.

### A. Patent Infringement

E-Link accuses Mericargo of infringing Patent '703. As the patent owner, it bears the burden of proving infringement. *See Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1377 (Fed. Cir. 2008). "The determination of infringement is a two-step process: First, the court interprets the claim to determine its scope and meaning; second, the court determines whether the accused device is within the scope of the properly construed claim." *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394 (Fed. Cir. 1994). Patent claim interpretation is a question of law for the court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996).

The first step—interpreting Patent '703's independent claim—is relevant to all three allegedly infringing Mericargo products because E-Link claims that each one contains every limitation in the independent claim. At the preliminary injunction stage (the only contested stage of the litigation with Mericargo on the merits), the pertinent question was whether "formed on" meant that "a single unitary construction" was necessary. Order Vacating Prelim. Inj. 9. This Court decided that it could not "reasonably construe 'formed on' to encompass devices that are . . . completely and purposely separable." Order Vacating HRX Prelim. Inj. 5, ECF No. 64 (cited in the order vacating the preliminary injunction as to Mericargo).

In its motion for summary judgment, E-Link asks this Court to find that "formed on" does not require a one-piece construction. It advances two new arguments for that conclusion that this Court has not already addressed and discarded: first, that "under ordinary cannons [sic] of construction, the term 'integrally formed' must be given a more limiting meaning than 'formed,'" and second, that the dictionary definition of "form" is broad. Mot. Summ. J. 5. Neither is persuasive. As to the first, E-Link does not explain what canons of construction they are referring to, and this Court has already explained why the cases defining "integrally formed" are not instructive. The second argument is similarly undeveloped, and moreover, the dictionary definition of "form" does not necessarily speak to interpreting the term "formed **on**." This Court therefore maintains its earlier conclusion that "formed on" does not include "completely and purposely separable" devices.

#### a. Product One

In its earlier Order, this Court determined that E-Link's evidence "strongly suggests [Product One] does infringe on the '703 Patent." Order Vacating Prelim. Inj. 8–9. Moreover, Mericargo did not "substantively dispute E-Link's contention that Product One is 'virtually identical' to the '703 Patent." *Id.* For those reasons, this Court found that E-Link was likely to succeed on its infringement claim as to Product One. The record provides no reason to doubt this Court's earlier conclusion. Mericargo didn't respond to E-Link's motion, so it has not advanced any new arguments to make this Court question its reasoning. The Court therefore finds that E-Link is entitled to summary judgment on its claim against Mericargo for Product One.

### b. Product Two

Product Two consists of two entirely separable pieces.



FIG. 1



FIG. 2

Order Vacating Prelim. Inj. 8. Its locking buttons therefore are not "formed on" the body of the pill container. For that reason, Product Two does not directly infringe E-Link's patent. *See id.* at 9.

E-Link alternatively contends that Mericargo is nonetheless liable for infringement under the doctrine of equivalents, which provides that "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997). To apply the doctrine, a factfinder must examine "whether the accused product 'performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product,'" *Abbott Lab'ys v. Grifols Diagnostic Sols. Inc.*, 693 F. Supp. 3d 911, 944 (N.D. Ill. 2023) (quoting *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009)), and "[a] finding of infringement under the doctrine of equivalents is 'exceptional.'" *NexStep, Inc. v. Comcast Cable Commc'ns, LLC*, 119 F.4th 1355, 1370 (Fed. Cir. 2024) (quoting *Honeywell International, Inc. v. Hamilton Sundstrand Corp.*, 523 F.3d 1304, 1313 (Fed. Cir. 2008)). Whether the doctrine of equivalents applies is a question of fact. *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1347 (Fed. Cir. 2013).

In support of its contention that Product Two is equivalent in the relevant ways to Patent '703, E-Link compares its features to that of Patent '703's. In its statement of material facts (deemed admitted), E-Link explains:

5

For Product Two, each and every limitation of the Infringing Product, if not directly infringing, all perform the same function, in the exact same way, and lead to the exact same result as each claim limitation of the Patent-in-Suit. Product Two's 'multiple locking buttons' are also on the front end of the product, perform the same function in the same way as the Patent-in-Suit locking buttons, and lead to the exact same result. Product Two's 'multiple lids' are also connected pivotally to the rear end of the compartments, performing the same function and in the same way as the Patent-in-Suit lids, and lead to the exact same result. Product Two's 'multiple resilient pushing bars' are also mounted on the rear end of the compartments, performing the same function and in the same way as the Patent-in-Suit pushing bars, and lead to the exact same result. Product Two's 'multiple insertions' are also on the rear end of the compartments, performing the same function and in the same way as the Patent-in-Suit insertions, and lead to the exact same result. Product Two's 'resilient pushing bars' correspond and are inserted into the respective 'insertion sockets'. Product Two's 'resilient pushing bars' and 'insertion sockets' perform the same function and in the same way as the Patent-in-Suit pushing bars and insertion sockets, and lead to the exact same result.

Pl.'s 56.1 Statement 4–5 ¶¶ 23. Because these facts are deemed admitted, and the doctrine of equivalents is a fact question, there are no remaining triable issues. The above makes clear that for each limitation of Claim 1, Product Two "performs substantially the same function in substantially the same way with substantially the same result." *Crown Packaging*, 559 F.3d at 1312. Therefore, in the absence of any argument to the contrary by Mericargo, the Court finds that E-Link is entitled to summary judgment on its infringement claim with respect to Product Two.

### c. Product Three

Product Three looks slightly different than Patent '703. Instead of a locking button as the opening mechanism, Product Three uses a pulling mechanism, as shown below.



FIG. 1



FIG. 2

6

Order Vacating Prelim. Inj. 9. Product Three does not literally infringe Patent '703, because it contains no "locking buttons." *See id.* Again, though, E-Link argues that Product Three infringes its patent under the doctrine of equivalents. Similarly to Product Two, E-Link's statement of material facts posits that "[f]or Product Three, each and every limitation of the Infringing Product, if not directly infringing, all perform the same function, in the exact same way, and lead to the exact same result as each claim limitation of the Patent-in-Suit." Pl.'s 56.1 Statement 5 ¶ 24. Because that statement is deemed admitted, there is no remaining dispute of fact. The doctrine of equivalents applies to Product Three, and E-Link is granted summary judgment.

### B. Affirmative Defenses and Counterclaims

Mericargo lists nine allegedly affirmative defenses in its answer to the complaint. Some are truly affirmative (*i.e.*, res judicata), and some are not (*i.e.*, failure to state a claim). As for the non-affirmative defenses, the Court only grants summary judgment where E-Link is entitled to it as a matter of law, and therefore consideration of those defenses is baked into the Court's above analysis where supported by the record. Regarding the affirmative defenses, the defendant did not develop them at all, and this Court will not make the defendant's arguments for it. *Bakov v. Consol. World Travel, Inc.*, No. 15 C 2980, 2020 WL 10963926, at *3 (N.D. Ill. Apr. 21, 2020) ("[T]he affirmative defenses not developed in summary judgment briefing are waived."); *Ramada Franchise Sys., Inc. v. Royal Vale Hosp. of Cincinnati, Inc.*, No. 02 C 1941, 2005 WL 435263, at *10 (N.D. Ill. Feb. 16, 2005) ("This Court is not obligated to construct arguments regarding the Defendants' affirmative defenses on their behalf."); *Bank of Am., N.A. v. Yang*, No. 12 CV 7480, 2014 WL 2208951, at *3 (N.D. Ill. May 27, 2014) ("While Defendants assert three affirmative defenses in their answer, including unclean hands, waiver and payment, Defendants fail to address their waiver and payment defenses in their response brief and therefore waive those defenses.").

As for Mericargo's counterclaims, E-Link argues that it is entitled to summary judgment on all of them because Mericargo did not allege or set forth facts to support them. The Court agrees. It is E-Link's initial burden to explain why it is entitled to summary judgment as a matter of law, and it has satisfactorily done so (especially in the face of Mericargo's sparse factual allegations). Mot. Summ. J. 8–12. Because Mericargo bears the burden of proof at trial, it must point to evidence in the record demonstrating a triable issue on each counterclaim. It failed to do so, meaning E-Link is entitled to judgment as a matter of law.

### C. Remedies

E-Link seeks compensatory damages against Mericargo and asks this Court to enhance any damages award for willful patent infringement. It also seeks a permanent injunction against Mericargo, enjoining it from "infringing or otherwise violating [E-Link's] patent rights." *Id.* at 15. As the party seeking relief, E-Link has the burden of showing it is entitled to these remedies as a matter of law. *See CCP Golden/7470 LLC v. Breslin*, 161 F.4th 461, 470 (7th Cir. 2025).

#### a. Damages

Federal law provides that a successful patent infringement plaintiff is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."

35 U.S.C. § 284. A court can enhance those damages by as much as a multiplier of three upon finding that the infringer acted willfully. *Id.*; *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 100 (2016). Enhanced damages "are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior." *Id.* at 103.

E-Link asks for $1,000,000 in compensatory damages based on the sales of all three products, asserting that one million is a "reasonable royalty." Mot. Summ. J. 12–13. "A reasonable royalty is the amount that a person, desiring to manufacture, use, or sell a patented article, as a business proposition, would be willing to pay as a royalty and yet be able to make, use, or sell the patented article, in the market, at a reasonable profit." *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1361 (Fed. Cir. 2006) (citation modified) (quoting *Trans–World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1568 (Fed. Cir. 1984)). E-Link represents that Mericargo made at least $1,003,929.67 from selling the infringing products. [1] Pl.'s 56.1 Statement 6 ¶ 28. If Mericargo were to pay E-Link a royalty and still turn a profit, it would likely have to pay less than that. While courts can consider other factors, like "the effect of using the patented specialty in promoting sales of other products of the licensee," *Trans–World*, 750 F.2d at 1568, E-Link provides no evidence of that here. The Court finds that $500,000 is an appropriate amount of compensatory damages.

The Supreme Court has made clear that the decision to enhance damages under § 284 is a discretionary one that deeply depends on the facts of each case, so long as damages are "generally reserved for egregious cases of culpable behavior." *Halo*, 579 U.S. at 103–04. But some of the factors courts may consider in analyzing this question include whether there was deliberate copying and the duration of the defendant's misconduct. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992), *abrogated in part on other grounds by Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). The admitted facts show that Mericargo knew or was constructively aware of Patent '703 at the time it made its products, that it did not conduct any research before selling its products, and that it has sold the products since at least 2021. Mot. Summ. J. 14–15. On this record, the Court finds that Mericargo willfully infringed Patent '703, and enhances the damages by a factor of 2, totaling $1,000,000.

### b. Injunction

A plaintiff seeking a permanent injunction must show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). E-Link argues that damages are insufficient to compensate it, because Mericargo's continued sale of infringing products

---

[1] E-Link says Mericargo actually made more money from sales on other platforms, but there is no evidence in the record regarding those alleged other sales.

irreparably injures E-Link's reputation and brand. Mot. Summ. J. 16. This Court agrees. While there is no automatic presumption of irreparable harm upon a finding of patent infringement, it is important to consider the "fundamental nature of patents as property rights granting the owner the right to exclude." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1148 (Fed. Cir. 2011). E-Link wants to build its brand based on the products it has patented, and Mericargo's actions continue to threaten its right to do so. Moreover, the existence of willful infringement tips the balance of hardships in E-Link's favor and makes an injunction in the public's interest. A permanent injunction is warranted.

\* \* \*

Mericargo willfully infringed E-Link's valid Patent '703 by selling Products One, Two, and Three. Product One literally infringes, while Products Two and Three infringe under the doctrine of equivalents. E-Link is entitled to $1,000,000 in damages and a permanent injunction.

Date: June 30, 2026

John J. Tharp, Jr.
United States District Judge

9